IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN BENEDETTO, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 19-4021 |
| | : | |
| ANDREW SAUL, COMMISSIONER | : | |
| OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**Henry S. Perkin, M.J.**                                                                                          **September 28, 2020**

## MEMORANDUM OPINION

Plaintiff, Robin Benedetto ("Plaintiff"), brings this action under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final decision of the Commissioner of Social Security ("Defendant"), denying her claim for disability insurance benefits ("DIB") provided under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-433. Subject matter jurisdiction is based upon section 205(g) of the Act. 42 U.S.C. § 405(g). Presently before this Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review (ECF No. 13); Defendant's Response to Request for Review of Plaintiff (ECF No. 14); and Plaintiff's Reply Brief (ECF No. 15). For the reasons that follow, Plaintiff's Request for Review will be **GRANTED** and the matter is remanded to the Commissioner in accordance with the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

I. **PROCEDURAL HISTORY**

Plaintiff protectively filed her application for DIB on June 11, 2015, alleging disability since May 2, 2015. (Record at 20, 187-190.) In her initial application, Plaintiff claimed disability as a result of a dissected carotid artery in the neck, herniated discs in neck with

1

pinched nerve, titanium cages in lower back L5-S1, multiple herniated discs in lower back, bone spurs in left hip and complications with right hip, a spinal fusion, carpal tunnel in both arms, COPD, and seizure disorder. (Record at 82.) Plaintiff also maintains, in her brief before this Court, that she suffers from severe emphysema, degenerative joint disease of the cervical and lumbar spines, obesity, degenerative joint disease (DJD) of the hips, substance abuse, obstructive sleep apnea, depression, and anxiety. (ECF No. 13 at 2.)  Plaintiff's earnings record shows that she has acquired sufficient quarters of coverage to remain insured through December 31, 2020, which is referred to as the date last insured. (Record at 23, 205-06.) Thus, in order to be eligible for DIB benefits, Plaintiff must prove that she became disabled on or before December 31, 2020. (Record at 23, Finding No. 1.)

The state agency initially denied Plaintiff's claim for DIB on July 28, 2015, and she filed a request for reconsideration on September 25, 2015 with which she submitted additional medical evidence. (Record at 82-93, 108-12, 114.) After reconsideration of the evidence, the state agency found that its previous determination denying Plaintiff's claim for DIB was proper. (117-119.) On March 31, 2015, Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  (Record at 120-21.)  A hearing was held on May 2, 2018 at which Plaintiff, who was represented by counsel, appeared and testified.  (Record at 38-81).  William Slaven, a vocational expert ("VE"), also appeared and testified at the hearing. (Record at 70-78.)

On July 3, 2018 after having considered evidence of Plaintiff's impairments, the ALJ issued a partially favorable decision in which he found that Plaintiff, given her age, education, work experience, and residual functional capacity ("RFC"), was capable of performing her past relevant work as a court clerk prior to July 11, 2017. (Record at 30, Finding

No. 7.) From July 11, 2017 onward, the ALJ found that there were no jobs that Plaintiff could perform that exist in significant numbers in the economy. (Record at 30, Finding No. 12.) Thus, the ALJ concluded that Plaintiff was not disabled prior to July 11, 2017, but became disabled on that date.  (Record at 31, Finding No. 13.)  Plaintiff timely requested review of the ALJ's decision and the Appeals Council denied Plaintiff's Request for Review on July 8, 2019. (Record at 1-11.)  Thus, the ALJ's decision, dated April 3, 2018, became the final decision of the agency. (Record at 1.)

Plaintiff initiated a civil action on September 4, 2019, seeking judicial review of the Commissioner's decision that she was able to perform her past relevant work prior to July 11, 2017, and thus was not entitled to DIB before that date. (ECF No. 2.)  Plaintiff filed a request for review on December 19, 2019. (ECF No. 13.)  The Commissioner filed his response on January 14, 2020, and Plaintiff filed a reply brief on January 29, 2020.  (ECF Nos. 14, 15.)

## II.     LEGAL STANDARD

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision. Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision.  *Richardson v. Perales*, 402 U.S. 389, 407 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  See also *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cer*t. *denied*, 507 U.S. 924 (1993).  Substantial evidence is "more than a mere scintilla of evidence," but may be less than a preponderance of the evidence. *Jesurum v. Sec'y of U.S. Dep't*

*of Health and Human Serv.*, 48 F.3d 114, 117 (3d Cir. 1995). Therefore, the issue before this Court is whether there is substantial evidence to support the Commissioner's final decision that Plaintiff was "not disabled" prior to July 11, 2017 and capable of performing her past relevant work.

Though the Court's duty is "to scrutinize the record as a whole to determine whether the conclusions reached [by the ALJ] are rational," *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir. 1979), the Court may not undertake *de novo* review of an ALJ's decision, nor may it re-weigh the evidence of record. *Williams*, 970 F.2d at 1182 (A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder."); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). However, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability. *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). This Court's review of legal questions presented by the Commissioner's decisions is plenary. *Schaudeck v. Comm'r of Social Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, he will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," he will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether he can perform work he has

4

>done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform his past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether he can perform other work which exists in the national economy. *See id.* § 404.1520(b)-(f).

*Schaudeck*, 181 F.3d at 431-32.  The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience and residual functional capacity. *Poulos v. Comm'r of Social Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).  RFC is defined as the most an individual can still do despite her limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

### III.  BACKGROUND

Plaintiff, born on January 19, 2961, was fifty-four years old at the time of her disability onset date. (Record at 15, 46, 82.) She obtained a GED certification but had no additional vocational training, licenses, or certificates in any field. (Record at 48, 236.) With respect to work history, Plaintiff last worked in May 2015 as a judicial clerk for the State of New Jersey where she was employed for fifteen years. (Record at 52-53, 227.) Plaintiff testified that she stopped working on May 2, 2015 because, on that day, she unexpectedly fell on the sidewalk. (Record at 52-53.) Plaintiff attempted to return to work in September of the same year, but was unsuccessful as she had to leave after only a few days. (Record at 23, 53.)  Plaintiff explained that she continued to fall unexplainedly, drop files, and experience joint pain in her hips. (Record at 53-54.)  Plaintiff has no other prior relevant work history.

During the May 2, 2018 hearing, Plaintiff appeared with a respiratory assistive device that carried an oxygen tank. (Record at 40.) Plaintiff testified that she had been using the device for continuously for approximately eleven months after having been prescribed the device

because her oxygen level kept "dropping down too low." (Record at 50, 55.) In response to the ALJ asking Plaintiff why she believed that she could not work, she replied that she "can't sit for long periods of time" and "can't type because [her] hands will fumble… or [she will] make a lot of typo errors." (Record at 51.) Plaintiff further explained that she will forget "what [she] was talking about." (Record at 51.) In September 2015, when Plaintiff attempted to return to work after her fall, she continued to fall on the floor and drop files. (Record at 53.) Plaintiff stated that her "hips give out on [her]" and, though she underwent a series of injections for the pain, she cannot undergo surgery because of complications with her carotid artery. (Record at 53-54.) Plaintiff further explained to the ALJ that she suffers from COPD and has numerous herniated discs throughout her neck and back. (Record at 55.)

In response to questioning from her attorney, Plaintiff also testified that her hands will frequently "go numb" and sometimes "cramp up." (Record at 60.) Plaintiff takes medication for her pain and anxiety, and has been seeing a psychologist and psychiatrist regularly over the past ten months for her anxiety. (Record at 61.)[1] As a symptom of her general anxiety, Plaintiff stated that she has difficulty concentrating. (Record at 63-64.) Plaintiff's pain inhibits her ability to sleep, and she takes naps daily as a result. (Record at 64-65.)

In a typical day, Plaintiff testified that she will get up, make coffee, and then sit on the recliner and watch television until she takes a nap. (Record at 66.) Plaintiff is able to cook, and regularly prepares dinner, but cannot lift or carry pots and pans that are too heavy. (Record at 67.) In response to questioning as to whether she can lift a gallon of milk, Plaintiff noted that she would have to "carry it close to [her]" rather than letting it hand down by her side. (Record at 68.) Plaintiff needs assistance from her boyfriend to get in and out of the shower, and

---

[1] Plaintiff had been attending weekly sessions with her psychologist until he left the practice three weeks prior to the date of the hearing. (Record at 61-62.)

has difficulty reaching her arms in front and overhead. (Record at 69.)  Plaintiff indicated that she can drive, but tries to limit her driving as her hands will cramp up. (Record at 48, 60.)

The VE then classified Plaintiff's past work as a court clerk as skilled work with an SVP of 6. (Record at 72.) Though the job is traditionally performed at a sedentary level, Plaintiff actually performed it as light work. (Record at 72.)  The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience who is able to perform work at the sedentary exertional level with the following limitations: occasional pushing/pulling with the bilateral lower extremities; frequent lateral and frontal reaching bilaterally and occasional overhead reaching; frequent fingering and handling, but occasional feeling; occasional climbing of ramps and stairs; never climbing ropes, ladders, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; avoiding work at unprotected heights; never working around exposed mechanical parts or dangerous machinery; and avoiding concentrated exposure to fumes, dusts, gases, odors, pulmonary irritants, and poor ventilation. (Record at 73.)  The VE testified that such individual could perform Plaintiff's past relevant work as a court clerk. (Record at 73.)

The ALJ then altered the hypothetical, adding "occasional adjustment to routines in the workplace; somebody who can do simple repetitive tasks; somebody who has frequent contact with supervision and with coworkers; somebody with occasional contact with the public; who can make simple workplace decisions; and somebody who can follow simple instructions." (Record at 73.) The VE opined that such an individual could not perform Plaintiff's past relevant work. (Record at 73.) With these limitations, however, there is work for the hypothetical individual that exists in significant numbers in the national economy. (Record at 76.) Such work includes addressing clerk, representing approximately 300,000 jobs in the national economy and

rating clerk, representing approximately 330,000 jobs in the national economy. (Record at 76-77.) The ALJ asked the VE if an individual, who cannot work to a production rate of pace, can still perform those jobs to which the VE responded that he or she could do so. (Record at 77.)

The ALJ added a final condition to the hypothetical, noting that such individual "might have to bring with them into the workplace an oxygen tank, and may need to have time to change it out." (Record at 74.) The VE indicated that it would depend on the setting and what the court would allow, but if it takes such individual thirty minutes to change his or her oxygen tanks and he or she has to do it every two hours, the individual would be off task too much to keep working. (Record at 74.) Upon further questioning from the ALJ regarding the tolerance in the national economy for time off task, the VE testified that if an individual is off task "10 percent or more, typically [their] employer will talk to [them] about it. If [the individual does not] improve, [the employer is] going to let [them] go." (Record at 75-76.) The VE further added that the tolerance for unscheduled absences was two days per month. (Record at 76.)

In addition to reviewing the transcript of the administrative hearing, this Court has independently and thoroughly reviewed the 777-page administrative record.  We will not further burden the record with a detailed recitation of the facts.  Rather, we incorporate relevant facts in our discussion below.

## IV.   ALJ DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

Plaintiff's alleged disability involves an inability to work because of chronic obstructive pulmonary disorder; emphysema; degenerative joint disease of the cervical and lumbar spines; obesity; degenerative joint disease (DJD) of the hips; history of carotid artery stenosis; substance abuse; obstructive sleep apnea; depression; and anxiety. (ECF No. 13 at 2.) The ALJ, proceeded through the sequential evaluation process and determined that Plaintiff was

not disabled prior to July 11, 2017, but became disabled on that date as a result of her impairments. (Record at 16-37.)

At step one, the ALJ initially noted that Plaintiff had not engaged in any substantial gainful activity from May 2, 2015, the alleged onset date, through her date last insured, December 31, 2020. (Record at 23, Finding No. 2.)

At step two, the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), emphysema, degenerative disc disease of the cervical and lumbar spine, obesity, degenerative joint disease of the bilateral hips, history of carotid stenosis, and substance use. (Record at 23-25, Finding No. 3.)

At step three, the ALJ determined the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and therefore, could not establish her entitlement to benefits on that basis. (Record at 25, Finding No. 4.)

At step four, the ALJ determined that, prior to July 11, 2017, Plaintiff had the residual functional capacity ("RCF") to perform sedentary work with the following limitations: no more than occasional pushing/pulling with bilateral lower extremities; no more than occasional reaching overhead and feeling with the bilateral upper extremities;  no more than frequent reaching in all other directions, fingering, and handling with the bilateral upper extremities; no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; never climbing ropes, ladders, or scaffolds; avoiding work at unprotected heights; never operating dangerous heavy machinery; avoiding concentrated exposure to dusts, gases, odors, fumes, pulmonary irritants, or poor ventilation; and never working around exposed moving mechanical parts, though Plaintiff can work around generic

office equipment. (Record at 25-29, Finding No. 5.) After July 11, 2017, the ALJ found that Plaintiff had the RFC to perform sedentary work with the same restrictions as above, however, Plaintiff would also be off task 10% of the workday in addition to normal breaks. (Record at 29, Finding No. 6.)  In view of the testimony of the VE,  the ALJ found that, prior to July 11, 2017, Plaintiff was able to perform her past relevant work experience as court clerk. (Record at 30, Finding No. 7.)  Beginning on July 11, 2017, Plaintiff's RFC prevented her from being able to perform her past relevant work. (Record at 30, Finding No. 8.)

At step five the ALJ found that, since July 11, 2017, considering the Plaintiff's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Record at 30-31, Finding No. 12.) Thus, a finding of disabled was appropriate only as of July 11, 2017. (Record at 31, Finding No. 13.)

In her Request for Review, Plaintiff asserts that the ALJ erred because he failed to: (1) account at step four for the impact of mild mental limitations on Plaintiff's ability to return to her skilled PRW as a court clerk, and (2) include the need for a sit-stand option as part of his RFC formulation. (ECF No. 13 at 4-13.)  The issues before this Court, however, are limited to whether the Commissioner's final decision of "not disabled" prior to July 11, 2017 should be sustained as being supported by substantial evidence and whether the ALJ applied the proper legal standards in evaluating a claim of disability.

This Court has reviewed the various sources of medical evidence, the submissions of counsel, and the testimony at the ALJ hearing.  Based on this Court's independent and thorough review of the record and for the reasons that follow, we find that the ALJ has not provided appropriate and adequate support for his decision.  Accordingly, we conclude that the

ALJ's decision is not supported by substantial evidence of record and Plaintiff's request for relief is granted.

V. **DISCUSSION**

    a. **Plaintiff's Mild Mental Limitations**

As noted above, the ALJ concluded that, prior to July 11, 2017, Plaintiff had the residual functional capacity to perform her prior work as a court clerk. (Record at 30, Finding No. 7.) Plaintiff contends that substantial evidence does not support the ALJ's decision. Specifically, Plaintiff first argues that the ALJ committed a reversible error by failing to account at step four for the impact of mild mental limitations on Plaintiff's ability to return to her skilled past relevant work as a court clerk. (ECF No. 13 at 4.) In his decision, the ALJ determined that, since May 2, 2015, Plaintiff had mild limitations with regard to understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (Record at 24.) Plaintiff claims that, in formulating his RFC assessment and in questioning the vocational expert, the ALJ did not consider the impact of these limitations. (ECF No. 13 at 4.)

Defendant responds that the ALJ "appropriately did not include mild limitations from his assessment under the four broad areas of functioning at steps two and three in his residual functional capacity determination at step four." (ECF No. 14 at 6.) Defendant explains that these mild limitations identified in steps two and three "are not an RFC assessment," and thus, were properly not included in the ALJ's determination of Plaintiff's RFC. *Id.* Lastly, Defendant maintains that, despite these mild limitations, Plaintiff's mental health treatment notes more than adequately demonstrate her ability to perform her past relevant work. (ECF No. 14 at 7.) For the reasons that follow, this Court finds that the ALJ committed a reversible error by

failing to include these mild limitations in the hypothetical questions posed to the VE and take them into consideration in formulating Plaintiff's RFC.

Pursuant to the Commissioner's regulations, RFC refers to the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a). In assessing a claimant's RFC, an ALJ must consider all of his or her medically determinable impairments, including those that are not severe. *See* 20 C.F.R. § 404.1545; *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 n.7 (3d Cir. 2005)("Although the impairment must be medically determinable, it need not be a "severe" impairment to be considered in the RFC assessment"). Further, when submitting a hypothetical to the vocational expert, the ALJ must accurately convey all of a claimant's medically established limitations. *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response." *Id.*; *see also Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004)(finding that the ALJ's decision denying benefits was not supported by substantial evidence where the ALJ's hypothetical to the VE did not accurately convey all of the claimant's impairments).

In *Green v. Colvin*, a case comparable to the one under consideration, the ALJ found at step two of the analysis that Green had mild impairments in her ability to perform daily living activities and to sustain concentration, persistence, or pace. 179 F. Supp. 3d 481, 483 (E.D. Pa. 2016). Green challenged the ALJ's ultimate finding of not disabled, arguing that the ALJ erred because her RFC assessment and hypothetical questioning of the VE failed to incorporate her own findings that Green had these mild limitations. *Id.* at 484. The Commissioner presented the same defense as it relies on in the present case, contending that "the ALJ made her findings as to these limitations when assessing Plaintiff's mental impairments at

step 2 of the sequential analysis, and that the broad functional findings made as part of this analysis are not an RFC assessment and need not be included in the more specific and detailed RFC assessment at step 4."[2] *Id.* at 485. Citing to *Ramirez*, the court remarked that the Third Circuit has "explicitly rejected this argument." *Id.* In *Ramirez*, the Court of Appeals "held that an ALJ's decision was not supported by substantial evidence where the ALJ's hypothetical 'did not adequately capture and recite all of [the plaintiff's] mental impairments and the limitations caused by those impairments,' including a limitation in concentration, persistence or pace that was found when assessing the plaintiff's mental impairments at step 2 of the sequential analysis." *Id.* In view of this holding, the court in Green remanded the case as the ALJ's RFC assessment and hypothetical questioning did not include Plaintiff's credibly established mild limitations. *Id.* at 386 (citing *Ramirez*, 372 F.3d at 551, 555).

Given the holdings in *Green* and *Ramirez*, this Court finds Defendant's argument unpersuasive. At step two, the ALJ determined that, "[b]ased upon consideration of the record as a whole, the undersigned finds that the claimant experiences mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself." (Record at 24.) Despite these findings, the ALJ makes no reference to these medically established impairments in his analysis of Plaintiff's residual functional capacity both prior to and after July 11, 2017. (Record at 25-29.)

Additionally, the ALJ failed to convey these supported mild limitations in his hypothetical questioning to the VE. As noted above, the ALJ did pose a hypothetical to the VE that included several considerable functional limitations. The hypothetical restricted the

---

[2] Similar to the present case, in *Green* the Commissioner did not dispute that the ALJ failed to include all of the limitations in her hypothetical questions to the vocational expert. *Green*, 179 F. Supp. 3d at 485.

13

individual to "occasional adjustment to routines in the workplace; somebody who can do simple repetitive tasks; somebody who has frequent contact with supervision and with coworkers; somebody with occasional contact with the public; who can make simple workplace decisions; and somebody who can follow simple instructions." (Record at 73.) However, the VE opined that, with such significant restrictions, the individual could not perform Plaintiff's past relevant work of a court clerk, classified as skilled work with an SVP of 6. (Record at 73.) Generally, individuals restricted to "simple, repetitive tasks" are limited to jobs requiring no more than an SVP level of 3. *See Zirnsak v. Colvin*, 777 F.3d 607, 617-18 (3d Cir. 2014); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *McHerrin v. Astrue*, No. CIV.A. 09-2035, 2010 WL 3516433, at *5 (E.D. Pa. Aug. 31, 2010); *Grasty v. Astrue*, 661 F. Supp. 2d 515, 523 (E.D. Pa. 2009). Thus, this hypothetical cannot be understood to have incorporated Plaintiff's mild limitations in the four broad functional areas nor can it be relied on to result in a finding that Plaintiff could have performed her skilled work as a court clerk prior to July 11, 2017.

Accordingly, the Court thus holds that the ALJ's decision was not supported by substantial evidence because the ALJ's RFC assessment and hypothetical questioning did not include Plaintiff's credibly established mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. The case will be remanded to the Commissioner for further consideration of whether Plaintiff's mental impairments limit her ability to perform her past or other work. On remand, the ALJ should include all of Plaintiff's mental and physical impairments in any hypothetical questions to the vocational expert.

### b. Sit-Stand Option in the RFC Assessment

Plaintiff also argues that the ALJ's failure to include the need for a sit-stand option as part of the RFC formulation is not supported by substantial evidence and represents a reversible and harmful error of law. (ECF No 13 at 10.) Plaintiff cites to the record, asserting that the medical evidence supports the need for a sit-stand option because it demonstrates significant degenerative joint disease of her lumbar spine and hips. (*Id.* at 10-13.) Defendant responds that the ALJ appropriately did not include a sit-stand option in the RFC assessment because Plaintiff did not prove that she required such option prior to July 11, 2017, the date on which she became disabled. (ECF No. 14 at 8.) Defendant explains that the ALJ first considered Plaintiff's treatment records which indicate that Plaintiff's pain improved with injections in her hips and pain medication. (*Id.*) Second, the ALJ took into account two medical expert opinions which noted no need for Plaintiff to alternate positions. *Id.*

While it appears from the ALJ's decision that he did not properly analyze and include the impact of Plaintiff's mild mental limitations in formulating Plaintiff's RFC, the same cannot be said of the ALJ's analysis of Plaintiff's need for a sit-stand option. In evaluating Plaintiff's RFC, the ALJ first acknowledged the objective medical evidence with respect to Plaintiff's lumbar spine and hips. The ALJ noted that:

> Examination in May 2015 found [Plaintiff] to be in obvious discomfort with limited range of motion in her cervical and lumbar spine . . . An MRI of her lumbar spine on May 22, 2015 showed L4-5 disc herniation and a prior fusion at L5-S1 . . . She was diagnosed with cervical and lumbosacral spondylosis, with long-term pain management recommended.

(Record at 26)(citations omitted). Further, the ALJ wrote that:

> [Plaintiff] complained of hip pain in July 2015, with examination finding tenderness over her trochanteric bursa and right sciatic notch, and discomfort with internal rotation. An MRI found

15

> osteoarthritis of the hips. In August 2016, she reported to her neurologist that her back and hip pain radiated to her legs and that her left leg would intermittently go numb. She stated that she had not been to pain management and was unable to sleep through the night. Examination found . . . she had lumbosacral spasms. In December 2016, she was ambulating with a cane. . . . A bilateral hip replacement surgery was recommended . . . [h]owever it appears that the claimant was then told her carotid artery condition prevented her from having the surgery.
>
> Upon consideration by an orthopedist in June 2017, she was found to be uncomfortable rising from a chair and to have a positive Stinchfield test bilaterally, tenderness in her lumbar spine, and good range of motion in her hips but with discomfort. X-rays showed moderate degenerative changes of her hips .This orthopedist found that a significant portion of the claimant's pain was related to her high-dose narcotic use and due to this does not think she was a good candidate for surgery.

(Record at 27)(citations omitted).

Though objective test results and treatment records indicate that Plaintiff experienced pain and discomfort in her lower back and hips, the ALJ also noted that, in 2015, Plaintiff was taking pain medication and admitted that it was effective and allowed her to perform her daily activities. (Record at 26.) Further, the ALJ remarked that hip injections "provided [Plaintiff] with excellent pain relief, with the first set of injections lasting for a year and subsequent injections providing pain relief for a less time." (Record at 27.) As noted by Defendant, the ALJ also considered the expert opinions of Drs. Acuna and Pirone, giving them partial weight. Neither opinion included a need for Plaintiff to alternate periods of sitting and standing. (*Id.*)

The ALJ thoroughly reviewed the evidence in reaching his conclusion that Plaintiff's residual functional capacity assessment did not need to include a sit-stand option. Despite Plaintiff's assertions to the contrary, the ALJ took note of the medical evidence of record, properly weighed the evidence of lumbar and hip impairments, and provided an

16

explanation for his findings. This Court may not reweigh the evidence nor substitute its conclusions for that of the ALJ. *Rutherford*, 399 F.3d at 552 (citing *Williams*, 970 F.2d at 1182). Thus, the Court finds no error in the ALJ's analysis of Plaintiff's need for a sit-stand option in his RFC assessment, and finds that Plaintiff's request for review on this issue is denied.

## VI. CONCLUSION

After a careful and thorough review of all of the evidence in the record, and for the reasons set forth above, this Court finds that the ALJ's findings are not supported by substantial evidence. Accordingly, Plaintiff's Request for Review is **GRANTED** and the matter is remanded to the Commissioner in accordance with the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.